# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| GUS'S FRANCHISOR, LLC, | ) |
| | ) |
|    Petitioner, | ) |
| | ) |
| | ) Case No. 2:20-cv-2447-JPM-atc |
| v. | ) |
| | ) |
| | ) |
| TERRAPIN RESTAURANT PARTNERS, | ) |
| LLC, PENN RESTAURANT GROUP, LLC, | ) |
| | ) |
|    Respondents. | ) |

## ORDER DENYING RESPONDENTS' MOTION TO DISMISS

      This cause is before the Court on Respondents Terrapin Restaurant Partners, LLC ("Terrapin") and Penn Restaurant Group, LLC's ("Penn") Motion to Dismiss, filed on July 27, 2020. (ECF No. 11.) Respondents move the Court pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss Petitioner Gus's Franchisor, LLC's ("Gus's) Complaint for lack of personal jurisdiction. (See generally id.) Defendants assert that they do not have the requisite minimum contacts with Tennessee for this Court to exercise jurisdiction over them. (Id. at PageID 155–56.)

      Gus's filed its Response on August 10, 2020. (ECF No. 13.) Gus's opposes the Defendant's Motion, raising three arguments in support of its position: (1) Defendants consented to this Court's jurisdiction over them by signing agreements containing forum selection clauses; (2) Defendants have waived their argument regarding lack of personal jurisdiction by consenting to a permanent injunction and generally by appearing in this case and

making arguments on the merits; and (3) Defendants are subject to jurisdiction in Tennessee because this Court's exercise of personal jurisdiction over them would not deny Defendants their due process and because the Defendants are amenable to service of process under Tennessee's long-arm statute.  (See generally id.)

For the reasons set forth below, Defendants' Motion to Dismiss is **DENIED**.

## I. BACKGROUND

Gus's filed its Complaint in this case on June 23, 2020.  (Compl., ECF No. 1.)  Gus's petitioned this Court for an order compelling the Parties to arbitrate claims that Respondents brought against Gus's in the Circuit Court of Prince George's County, Maryland.  (Terrapin Restaurant Partners, LLC v. Gus's Franchisor, LLC, Case No. CAL-20-11219.)  This Court entered an Order Compelling Arbitration on September 1, 2020.

This case is a related case of Gus's Franchisor, LLC v. Terrapin Restaurant Partners, et al, Case No. 2:20-cv-02372-JPM-cgc (W.D. Tenn. May 22, 2020) ("Related Case").  Gus's filed its Complaint in the Related Case on May 22, 2020.  (Compl., ECF No. 1.)[1]  Gus's alleges that Defendants Terrapin and Mark Dawejko[2] unlawfully used Gus's trademarks, trade dress, trade secrets and proprietary business information in operating their Greenbelt, Maryland Gus's franchise after Gus's terminated its franchise relationship with Defendants on or about May 8, 2020.  (See id. ¶¶ 1–4.)  Gus's filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction on May 26, 2020.  (ECF No. 8.)

---

[1] References to docket entries in the rest of this Order are references to docket entries in the Related Case, in which Respondents filed an identical Motion to Dismiss and Petitioner filed an identical Response, unless otherwise indicated.

[2] The Defendants in the Related Case are Terrapin and Mark Dawejko, Managing Member of Terrapin.  Dawejko is not a named Party in the instant case.  Instead, Penn has been named a Defendant.  Respondents' Maryland Complaint asserts harm to Penn arising out of a similar set of agreements with Gus's (See Case No. 2:20-cv-02447, ECF No. 1-2.)  In the agreements with Penn, Dawejko is named as the President.  (Id. at PageID 42.)  All Parties focus on the franchise relationship between Terrapin and Gus's in their briefings on the Motion to Dismiss, and so this Order addresses those arguments.

The Court held a hearing on May 29, 2020 on Gus's application for a TRO ("TRO Hearing"). (ECF No. 17.) After hearing testimony from Mark Dawejko, the Court granted the TRO. (TRO, ECF No. 20.) In finding that the Court had jurisdiction to issue the TRO, this Court found that "Dawejko signed a number of documents related to the draft Franchise Agreement, and several included forum selection clauses designating this Court as the proper venue for litigation arising out of the relationship between Plaintiff and Defendants." (Id. at PageID 656.)

On June 15, 2020, the Court entered a Consent Permanent Injunction as submitted by the Parties. (ECF No. 26.) The Consent Permanent Injunction states that "Defendants have agreed to withdraw the jurisdictional arguments raised at the TRO hearing and consent to this Court's jurisdiction for the purposes of entry and enforcement of this Consent Injunction." (Id. at PageID 672.)

On June 23, 2020, Gus's filed its Amended Complaint, alleging that Defendants continued to operate their restaurant as a Gus's Fried Chicken franchise despite the TRO and Permanent Injunction. (Am. Compl., ECF No. 28 ¶¶ 6–11.) Gus's also filed a Motion for Contempt, claiming that Defendants violated the Court's TRO and Permanent Injunction. (ECF No. 29.) A hearing was held on Gus's Motion for Contempt on July 28, 2020 (ECF No. 40), after which the Court entered an Order Granting Plaintiff's Motion for Contempt on August 31, 2020. (ECF No. 49.)

On July 27, 2020, the Defendants filed the instant Motion to Dismiss for Lack of Jurisdiction in both this case and the Related Case. (2:20-cv-02447, ECF No. 11 & 2:20-cv-02372, ECF No. 39.) Exhibit A to Defendants' Motion to Dismiss is the Affidavit of Mark Dawejko ("Dawejko Aff."), in which he states that "[n]either Terrapin nor [he] are parties to a

contract or other written agreement with Gus's concerning the sale of food, beverages or any other marketable item." (Dawejko Aff., ECF No. 39-1 ¶ 10.)

Gus's filed its Response on August 10, 2020. (ECF No. 45.) Exhibit B to Gus's Response is the Declaration of Wendy McCrory ("McCrory Decl."), in which she states, in part, that "Terrapin and Dawejko each signed multiple franchise documents reflecting their consent to jurisdiction in Tennessee." (ECF No. 45-1 ¶ 5.) The franchise documents identified by McCrory include the Personal Guaranty (ECF No. 28-6), the Acknowledgment of Receipt of Gus's Operations Manual (ECF No. 28-7), the Notice of Proprietary and Confidential Information (ECF No. 8-2) and the Telephone Number and Directory Advertising Assignment Agreement (McCrory Decl., Exh. A, ECF No. 45-1.)

## II.    LEGAL STANDARD

A defendant may challenge personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). "The plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant." Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005). A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [defendants] and the forum state to support jurisdiction.'" Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. Loans Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)) (internal quotation marks omitted). The plaintiff cannot rest on the pleadings alone; by affidavit or otherwise, the plaintiff must provide specific evidence supporting the court's personal jurisdiction over the defendant. Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449 (6th Cir. 2012). If the plaintiff meets his prima facie burden, the Court must deny the motion to dismiss, "notwithstanding any controverting presentation by the moving party." Serras v. First Tenn. Bank Nat'l Ass'n, 875

F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 889, 904 (2d Cir. 1981)).

If the court does not conduct an evidentiary hearing on the issue of personal jurisdiction, it will "not consider the facts proffered by the defendant that conflict with those offered by the plaintiff and will construe the facts in the light most favorable to the nonmoving party." Neogen Corp., 282 F.3d at 887 (6th Cir. 2002) (quoting Provident Nat'l Bank, 819 F.2d at 437) (citation omitted).  The plaintiff's burden to establish a prima facie case of personal jurisdiction is "relatively slight" when the court relies solely on the pleadings and the parties' affidavits without holding an evidentiary hearing or directing the parties to conduct jurisdictional discovery. Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007) (quoting Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988)).

"Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002); Aristech Chem. Int'l Ltd. v. Acrylic Fabricators, Ltd., 138 F.3d 624, 627 (6th Cir. 1998); CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).  A finding that the exercise of personal jurisdiction over the defendant does not comport with the Due Process Clause of the Fourteenth Amendment "foreclose[s] the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would otherwise permit it." Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991).  The jurisdictional limits of Tennessee's long-arm statute are coterminous with the limits of federal due process. Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); see also First Cmty. Bank, N.A. v. First Tennessee

5

Bank, N.A., 489 S.W.3d 369, 384 (Tenn. 2015), cert. denied sub nom. Fitch Ratings, Inc. v. First Cmty. Bank, N.A., 136 S. Ct. 2511, 195 L. Ed. 2d 841 (2016); Tenn. Code Ann. § 20-2-223(a).  The Court need only determine whether exercising personal jurisdiction over the defendant is consistent with federal due process requirements.  Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003).  The Due Process Clause of the Fifth Amendment requires that a non-resident defendant have at least "certain minimum contacts with the [forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"There are two kinds of personal jurisdiction within the Federal Due Process inquiry: (1) general personal jurisdiction, where the suit does not arise from defendant's contacts with the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's contacts with the forum state."  Conn v. Zakharov, 667 F.3d 705, 712–13 (6th Cir. 2012).  General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of the connection (or lack thereof) between the claim and the forum.  Maxitrate Tratamento Termico E Controles v. Super Sys., Inc., 617 F. App'x 406, 408 (6th Cir. 2015), cert. denied sub nom. Maxitrate Tratamento Termico E Controles v. Allianz Seguros S.A., 136 S. Ct. 336 (2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 769 (2014)).  Under the Due Process Clause, general jurisdiction over a corporation requires that the corporation's "affiliations with the State [be] so 'continuous and systematic' as to render them essentially at home in the forum State."  Diamler AG v. Bauman, 134 S.Ct. 746, 761 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Specific jurisdiction, on the other hand, "exposes the defendant to suit in the forum state only on claims that arise out of or relate to a defendant's contacts with the forum." Kerry Steel, Inc. v. Paragon Indus., Inc., 106 F.3d 147, 149 (6th Cir. 1997). The Sixth Circuit has established the following three-part test for specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir.1968); see also Harmer v. Colom, 650 F. App'x 267, 272 (6th Cir. 2016).

### III. ANALYSIS

Gus's asserts that this Court should deny Defendants' Motion for three reasons: (1) Defendants have consented to this Court's exercise of personal jurisdiction over them; (2) Defendants have waived their argument that this Court lacks personal jurisdiction over them; and (3) Defendants have the necessary contacts with Tennessee for this Court to exercise personal jurisdiction over them. (See generally ECF No. 45.) The Court addresses each of Gus's arguments in turn.

#### A. *Defendants Consented to Jurisdiction in Tennessee*

Gus's first argues that "Defendants signed a number of agreements that either directly incorporated or contain a forum selection clause or an agreement to submit to this Court's jurisdiction" and that therefore Defendants consented to jurisdiction in Tennessee. (ECF No. 45 at PageID 1513.) Defendants do not directly address Gus's consent argument in their Motion, but they allege that they did not execute the Franchise Agreement. (ECF No. 39-2 at PageID 1484.)

7

Section 17.4(a) of the unsigned Franchise Agreement provides that any "legal proceeding involving [the] Franchise Business or [] Agreement" will be conducted in Shelby County, Tennessee and that the parties consent to the jurisdiction of this Court. (Compl., Exh. 4, ECF No. 1-7 at PageID 436–37.) Section 17.4(b) states that "[t]he parties specifically agree that [the Franchise] Agreement requires systematic and continuous contact" with Shelby County, Tennessee and that those "contacts include the payment of fees… the supplying of financial and other information into [Tennessee]… training and orientation… and the performance of other obligations under [the Franchise] Agreement." (Id. at PageID 437.)

This Court has previously found that, although the Franchise Agreement itself was never signed, multiple agreements incorporating the terms of the Franchise Agreement or including provisions consenting to this Court's jurisdiction were signed and executed by Dawejko, Terrapin's Managing Member. (See TRO, ECF No. 20 at PageID 656; see also 2:20-cv-02447, Order Compelling Arbitration, ECF No. 20 at PageID 254.) The Personal Guaranty, executed by Terrapin through Dawejko, incorporates the terms of the Franchise Agreement, specifically including the dispute resolution provisions in Article 17. (Compl., Exh. 5, ECF No. 1-8 ¶ 2.) Dawejko also signed the Notice of Proprietary and Confidential Information (Motion for TRO and Preliminary Injunction, ECF No. 8-2, Exh. A at PageID 523) and the Acknowledgment of Receipt of the Operations Manual (Compl., Exh. 6, ECF No. 1-9 ¶ 14), both of which include a provision stating that the Parties consent to the jurisdiction of this Court over suits arising out of the Franchise Agreement.

"The Sixth Circuit has recognized that parties may, through a forum selection clause, 'agree in advance to submit to the jurisdiction of a particular court.'" Ingram Barge Co., LLC v. Bunge N. Am., Inc., 455 F. Supp. 3d 558, 570 (M.D. Tenn. 2020) (quoting Preferred Capital,

Inc. v. Assocs. in Urology, 453 F.3d 718, 721 (6th Cir. 2006)).  "That rule arises from the premise that the right not to be subject to a particular court's personal jurisdiction is a 'waivable right,' and a party may, therefore, 'consent to the personal jurisdiction of a particular court system' that otherwise would not have jurisdiction."  Id. (citing Preferred Capital, 453 F.3d at 721 (quoting Kennecorp Mortg. Brokers, Inc. v. Country Club Convalescent Hosp., Inc., 610 N.E. 2d 987, 988 (Ohio 1993))).

Because Defendants signed multiple agreements relating to the franchise relationship at issue in this case and that incorporated or directly included provisions consenting to this Court's jurisdiction, the Court finds that it has jurisdiction over the Defendants.  See Staubach Retail Servs-SE, LLC v. H.G. Hill Realty Co., 160 S.W.2d 521, 525 (Tenn. 2005) (discussing Tennessee law stating that "a writing may be incorporated by reference into a written contract" and that "[w]hen a party who has not signed a contract demonstrates its assent by performing pursuant to the contract and making payments conforming to the contract's terms, that party is estopped from denying the binding effect of the contract").

   B. *Defendants Waived 12(b)(2) Arguments*

Gus's next argues that Defendants have waived their arguments regarding this Court's lack of jurisdiction.  (ECF No. 45 at PageID 1515–18.)  Specifically, Gus's argues that Defendants' waived their jurisdiction arguments by (1) consenting to the permanent injunction and (2) making a general appearance.  (Id.)  Defendants did not address this argument in their Motion to Dismiss.

The Sixth Circuit has held that the requirement of personal jurisdiction may be waived, either explicitly or implicitly, when a defendant's actions "amount to a legal submission to the jurisdiction of the court."  Days Inns Worldwide, Inc. v. Patel, 445 F.3d 899, 905 (6th Cir. 2006)

9

(quoting Ins. Corp. of Ireland, Ltd. V. Campagnie des Bauxites de Guinee, 456 U.S. 694, 703–05 (1982)).  The Federal Circuit, on review of a case from the Western District of Tennessee (Case No. 1:02-cv-01064), has also held that, where "defendants voluntarily entered into [an] injunction order with no reservation of a right to challenge the court's jurisdiction," the defendants waived their personal jurisdiction defense.  Aeration Sols., Inc. v. Dickman, 85 F. App'x 772, 775 (Fed. Cir. 2004).

Defendants in the Related Case consented to this Court's jurisdiction over the Consent Permanent Injunction entered on June 15, 2020.  (ECF No. 26.)  They withdrew their jurisdiction arguments raised at the TRO Hearing and "consent[ed] to this Court's jurisdiction for the purposes of entry and enforcement" of the Consent Permanent Injunction.  (Id. at PageID 672.)  The effect of that provision of the Consent Permanent Injunction on Respondents' ability to challenge jurisdiction in the instant case is unclear, however.  Because the Consent Permanent Injunction does not by its terms apply to the instant case, this Court does not find that Respondents waived their jurisdictional arguments in the instant case.

 C. *Defendants are Subject to Jurisdiction in Tennessee*

Finally, even if Defendants have not consented to this Court's jurisdiction or waived their personal jurisdiction defense, Gus's argues that the Defendants are subject to this Court's jurisdiction because they have sufficient contacts with Tennessee.

 i. General Jurisdiction

Defendants argue that neither Terrapin nor Penn are "at home" in Tennessee and that therefore this Court cannot exercise general jurisdiction over the Respondents.  (2:20-cv-02447, ECF No. 11-2 at PageID 167–68.)  Gus's argues that the terms of the Franchise Agreement, incorporated by the Personal Guaranty as discussed above, provide that "the parties specifically

agree that this Agreement requires <u>systematic</u> and <u>continuous</u> contact" with Tennessee.  (ECF No. 45 at PageID 1520.)  A defendant is "at home" in a state when its "affiliations with the State [are] so 'continuous and systematic' as to render [the defendant] essentially at home in [that] State."  <u>Daimler AG</u>, 134 S.Ct. at 761 (quoting <u>Goodyear Dunlop Tires</u>, 564 U.S. at 919).  Because Respondent Terrapin agreed that the franchise relationship would require continuous and systematic contacts with Tennessee, this Court can properly exercise general jurisdiction over Respondent Terrapin.  The record does not include a similar provision relating to Penn's franchise agreement with Gus's, and Gus's has not made any specific allegations regarding Penn's having continuous and systematic contacts with Tennessee, so the Court finds at this time that it cannot properly exercise general jurisdiction over Respondent Penn.

### ii. Specific Jurisdiction

Even if Defendants' contacts with Tennessee are insufficient to establish this Court's general jurisdiction over them, their contacts with Tennessee satisfy the three-part <u>Mohasco</u> test.  401 F.2d at 381.  First, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state."  <u>Id.</u>  Second, "the cause of action must arise from the defendant's activities there."  <u>Id.</u>  And third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."  <u>Id.</u>

Defendants primarily argue that they "never entered into a franchise agreement or other written contract" and that therefore they never purposefully availed themselves of the privilege of acting in Tennessee.  (ECF No. 39-2 at PageID 1483–86.)  Gus's argues that "Defendants, without question, reached out beyond Maryland to negotiate with a Tennessee corporation for the purchase of a long-term franchise and the benefits that would derive from such an

11

affiliation" and that, in doing so, Defendants purposefully availed themselves of the privilege of acting in or causing consequences in Tennessee. (ECF No. 45 at PageID 1522.)

Turning to the first Mohasco requirement, a defendant purposefully avails himself of a forum's protections when his "conduct and connection with the forum are such that he should reasonably anticipated being hauled into court there." Willock v. Hilton Domestic Operating Co., Inc., --- F. Supp. 3d ----, 3:20-CV-00042, 2020 WL 4207651, at *5 (M.D. Tenn. July 22, 2020). The relevant inquiry is "whether the defendant has 'engaged in some overt actions connecting the defendant with the forum state.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480 (1985)).

Burger King involved a franchise dispute in which the defendant, a Michigan resident, executed a franchise agreement with Burger King, a Florida corporation. 471 U.S. 462. The Supreme Court held that jurisdiction was proper in Florida because the franchise dispute grew directly "out of a contract which had a *substantial* connection with that State." Id. at 478. Relevant to the holding were the following facts: (1) the defendant reached out beyond Michigan and negotiated with Burger King for the purchase of a long-term franchise; (2) the defendant entered into a relationship that "envisioned continuing and wide-reaching contacts with Burger King in Florida"; and (3) the defendant "voluntary[ily] accept[ed] the long-term and exacting regulation of his business from Burger King's Miami headquarters." Id. at 479–80. The Supreme Court also stated that the defendant's "refusal to make the contractually required payments in Miami, and his continued use of Burger King's trademarks and confidential business information after his termination, caused foreseeable injuries to the corporation in Florida." Id.

12

In the instant matter, Defendants reached out beyond Maryland to negotiate with Gus's, a Tennessee corporation, for the purchase of a long-term franchise. Dawejko testified at the TRO Hearing that he was "very fond of Gus's and the product" and that after he moved and realized that the market in the Mid-Atlantic United States region "did not offer a good quality southern fried chicken," he reached out to Wendy McCrory. (TRO Hearing Transcript ("Hr'g Tr."), ECF No. 27 at PageID 731:1-12.) Gus's approved the lease that Dawejko signed as Terrapin's Managing Member. (Id. at PageID 732:16-25.) Gus's had representatives present at the opening of the restaurant in Greenbelt, Maryland, trained the location's management and exercised control over the Franchise, in part by making decisions regarding Defendants' advertising practices.[3] (Id. at PageID 734:24–737:11.) Dawejko also testified at the TRO Hearing that he signed the Acknowledgment of Receipt of the Operations Manual, in which he consented to jurisdiction in Tennessee, "at Joel Sklar's office, Evans Petree" in Memphis. (Id. at PageID 700:7-10.) All of these are "overt actions" connecting Defendants to Tennessee.

Defendants argue that Burger King is distinguishable from the instant action because they never entered into a franchise agreement or other written contract with Gus's. (ECF No. 39-2 at PageID 1495.) But Defendants have previously testified, and this Court has already found, that Defendants have signed a number of documents relating to this franchise relationship, even if the Franchise Agreement itself was never executed. Furthermore, Defendants assented to the Franchise Agreement by acknowledging Gus's control over the franchise and by paying royalty fees to Gus's. See Staubach Retail Servs.-SE, LLC, 160 S.W.3d at 525. The Court finds that Defendants purposefully availed themselves of the privilege of

---

[3] In the TRO, this Court previously found that "Dawejko's testimony [] supports a finding that Plaintiff had significant control over the Franchise, and thus its associated marks, trade dress and trade secrets." (ECF No. 20 at PageID 657.)

doing business in Tennessee by reaching out to Tennessee to negotiate a long-term franchise agreement, entering into that franchise relationship and accepting Gus's control over their franchise operation.  See Burger King, 471 U.S. at 479–80.

The second Mohasco requirement is satisfied in this case because Gus's claims arise from Defendants' contacts with Tennessee.  "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts."  CompuServe, Inc., 89 F.3d at 1267.  The operative facts in this case, including allegations of breach of contract, trademark infringement, misappropriation of trade secrets, trade dress infringement and unfair competition, are "at least marginally related to the alleged contacts between [Defendants] and [Tennessee]."  First Tennessee Nat. Corp. v. Horizon Nat. Bank, 225 F. Supp. 2d 816, 821 (W.D. Tenn. 2002) (quoting Bird, 289 F.3d at 875).  Gus's claims are based on allegations that Defendants refused to pay required fees and continued to use Gus's trademarks, trade secrets, confidential information, proprietary business system and trade dress after Gus's terminated the franchise relationship between the Parties.  (Compl., ECF No. 1 ¶¶ 1–4.)  Contacts of a similar nature were sufficient to establish jurisdiction in Burger King and are sufficient to do so here.

When a court finds purposeful availment and a cause of action arising from a defendant's contacts with the forum state, an inference arises that the exercise of jurisdiction is reasonable, satisfying the third Mohasco requirement. First Tennessee Nat. Corp., 225 F. Supp. 2d at 821–22 (citing CompuServe, Inc., 89 F.3 at 1268).  In the present case, the Court has found both purposeful availment and that Gus's causes of action arise from the Defendants' contacts with Tennessee; therefore, Defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Air Prods. &

14

Controls, Inc., 503 F.3d at 554 (quoting Burger King, 471 U.S. at 477). "[O]nly the unusual case will not meet this third criteria." Id. (quoting Theunissen, 935 F.2d at 1461).

Defendants state that this Court's jurisdiction over them is unreasonable because they would be "completely prejudiced if they have to avail themselves to this Court's jurisdiction" and because they already initiated litigation in Maryland relating to the same franchise relationship. (ECF No. 39-2 at PageID 1485.) Gus's argues that Defendants agreed to this Court's jurisdiction over them and that Tennessee has an interest in protecting the rights of its citizens. (ECF No. 45 at PageID 1528.)

Defendants do not support their assertion that they would be prejudiced by having to avail themselves of this Court's jurisdiction with any factual allegations, and nothing in the record suggests that litigation in this Court would be extraordinarily burdensome. Defendants, not Gus's, initiated the lawsuit in Maryland, and they did so despite having signed multiple agreements consenting to jurisdiction in Tennessee. Defendants cannot rely solely on the existence of the Maryland lawsuit to claim that this Court's exercise of jurisdiction over them is unreasonable when they chose to initiate that lawsuit after reading and signing agreements calling for exclusive jurisdiction and venue in Tennessee. (Hr'g Tr., ECF No. 27 at PageID 717:21–718:23.)

In summary, Defendants purposefully availed themselves of the privilege of conducting activities in Tennessee, Gus's causes of action arise out of Defendants' contacts with Tennessee and this Court's exercise of jurisdiction over Defendants is reasonable. Therefore, the Court finds that it has specific jurisdiction over Defendants.

## IV. CONCLUSION

Because Respondents consented to this Court's exercise of jurisdiction over them and because Respondents have sufficient contacts with Tennessee to establish this Court's specific personal jurisdiction over them and this Court's general personal jurisdiction over Terrapin, Respondents' Motion to Dismiss is **DENIED**.

**SO ORDERED**, this 23rd day of November, 2020.

                                               /s/ Jon P. McCalla
                                             JON P. McCALLA
                                             UNITED STATES DISTRICT JUDGE